IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LAND OF LINCOLN MUTUAL HEALTH
INSURANCE COMPANY,

        Plaintiff,

        v.

THE UNITED STATES OF AMERICA,

        Defendant.

No. 16-744C
Judge Charles F. Lettow

## PLAINTIFF'S REPLY IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Daniel P. Albers
BARNES & THORNBURG LLP
One N. Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone:  (312)357-1313
Fax:  (312) 759-5646
Email: dalbers@btlaw.com

*Of Counsel:*

Scott E. Pickens
BARNES & THORNBURG LLP
1717 Pennsylvania Avenue N.W.
Suite 500
Washington, DC 20006
Telephone: (202) 371-6349
Fax: (202) 289-1330
Email: scott.pickens@btlaw.com

*Counsel for Plaintiff Land of Lincoln
Mutual Insurance Company*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ....................................................................................................... 2

      A.    There is Jurisdiction. ..............................................................................4

      B.    Lincoln is Entitled to Judgment On Count I. .........................................7

      C.    Congress Did Not Change the Government's Obligation to Pay by Post Hoc
            Appropriations Laws............................................................................10

      D.    The Government's Other Arguments are Factually and Legally Baseless and
            Do Not Abrogate the Plain Requirement of the ACA that It "Shall Pay"
            RCPs. ....................................................................................................13

III.  CONCLUSION................................................................................................... 16

**TABLE OF AUTHORITIES**

Page(s)

Cases

*In Re Aiken County,*
  725 F.3d 255 (D.C. Cir. 2013) ............................................................................................... 9

*Amell v. United States,*
  384 U.S. 158 (1966) ............................................................................................................ 12

*Cherokee Nation of Oklahoma v. Leavitt,*
  543 U.S. 631 (2005) ........................................................................................................... 2, 7

*Chevron U.S.A., Inc. v. National Res. Def. Council, Inc.,*
  467 U.S. 837 (1984) ........................................................................................................... 15

*Chrysler Group v. Fox Hills,*
  776 F.3d 411 (6th Cir. 2015) .............................................................................................. 15

*Ellis v. United States,*
  222 Ct. Cl. 65, 610 F.2d 760 (1979) ...................................................................................... 7

*Fourco Glass Co. v. Transmirra Products Corp.,*
  353 U.S. 222 (1957) ........................................................................................................... 12

*Friedman v. United States,*
  159 Ct. Cl 1, 310 F.2d 381 (1962) ......................................................................................... 8

*FTC v. APW Paper Co.,*
  328 U.S. 193 (1946) ........................................................................................................... 12

*Greenlee County v. United States,*
  487 F.3d 871 (Fed. Cir. 2007), *cert. den.* 552 U.S. 142 ......................................................... 2

*Jones v. Mayer Co.,*
  392 U.S. 409 (1968) ........................................................................................................... 12

*King v. Burwell,*
  135 S.Ct. 2480 (2015) .......................................................................................................... 9

*Matthews v. United States,*
  123 U.S. 182 ................................................................................................................... 11, 12

*Mead Corp. v. Tilley,*
  490 U.S. 714 (1989) ........................................................................................................... 15

*New York Airways, Inc. v. United States,*
  177 Ct. Cl. 800, 369 F.2d 743 (1966) .......................................................................... 2, 8, 9, 13

*Office of Personnel Management v. Richmond,*
  496 U.S. 414 (1990) ............................................................................................................. 2

Parker v. Office of Pers. Mgmt.,
   974 F.2d 164 (Fed. Cir. 1992) .................................................................................. 14

Posadas v. National City Bank,
   296 U.S. 497 (1936) ............................................................................................... 12

Prudential Insurance Co. v. United States,
   801 F.2d 1295 (Fed. Cir. 1986) .................................................................................. 8

Rosenberg v. United States,
   346 U.S. 273 (1953) ............................................................................................... 12

Salazar v. Ramah Navajo Chapter,
   132 S. Ct. 2181 (2012) ......................................................................................... 2, 7

Silver v. New York Stock Exchange,
   373 U.S. 341 (1963) ............................................................................................... 12

Smykowski v. United States,
   227 Ct. Cl. 284 (1981) ............................................................................................. 8

Sperry Corp. v. United States,
   13 Cl. Ct. 453 (1987) .............................................................................................. 8

TVA v. Hill,
   437 U.S. 153 (1978) ............................................................................................... 13

United States v. Borden Co.,
   308 U.S. 188 (1939) ............................................................................................... 12

United States v. Philadelphia National Bank,
   374 U.S. 321 (1963) ............................................................................................... 12

United States v. Welden,
   377 U.S. 95 (1964) ................................................................................................ 12

United States v. White Mountain Apache Tribe,
   537 U.S. 465 (2003) ................................................................................................. 5

United States v. Zacks,
   375 U.S. 59 (1963) ................................................................................................ 12

Universal Interpretive Shuttle Corp. v. Washington Metro Area Transit Commission,
   393 U.S. 186 (1968) ............................................................................................... 12

## PLAINTIFF'S REPLY IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Pursuant to Rule 52.1(c) of the Rules of the United States Court of Federal Claims and the Court's Orders of August 12, 2016 and October 18, 2016, Plaintiff Land of Lincoln Mutual Health Insurance Company ("Lincoln") replies in support of its Motion for Judgment on the Administrative Record.

## I.    INTRODUCTION

Defendant United States ("Government") is engaged in a massive, politically-motivated bait and switch. Congress passed the ACA with a requirement its agency HHS "shall pay" risk corridors payments ("RCPs") to QHPs like Lincoln who provide coverage to insureds under the Act. There was no requirement that the RCPs be budget neutral nor was the law made contingent on later appropriations. Lincoln complied with the law and provided the coverage to over 50,000 Illinois residents. It incurred huge losses because of the uncertainties and the risks it was required to insure as a QHP (all applicants with their pre-existing conditions). But now, after the fact, the Government has driven nearly all of the non-profit ACA Co-ops like Lincoln out of business by refusing to make timely RCPs, creating from whole cloth its arguments that it was always Congress' intent to make risk corridors "payments out" only to the extent of risk corridors "payments in" and that its agency HHS always intended to run risk corridors in a budget neutral fashion. These *post hoc* rationalizations are not supported by the Administrative Record ("AR") and directly contradict the plain language of the ACA and its implementing regulations. QHPs like Lincoln relied on the risk corridors program in entering the market. The

Government cannot refuse to abide by its own law after the fact to satisfy a changed political agenda.[1]

The essential facts from the AR are not disputed. Judgment on the administrative record is proper on Count I claims because: (1) the plain language of the ACA requires payment and that obligation exists regardless of whether Congress appropriated sufficient money to meet it (*New York Airways, Inc. v. United States*, 177 Ct. Cl. 800, 369 F.2d 743 (1966); and *Greenlee County v. United States*, 487 F.3d 871 (Fed. Cir. 2007), *cert. den.* 552 U.S. 142); and (2) even if the ACA had been made "subject to available appropriations" (and it was not) Congress has appropriated sufficient funds (by user fees) to pay Lincoln's claims and the Government again is obligated to do so regardless of whether it appropriated sufficient funds to make all RCPs. *Salazar v. Ramah Navajo Chapter*, 132 S. Ct. 2181, 2194 (2012) (citing *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990) as indicating "that the Appropriations Clause is no bar to recovery in a case like this one, in which 'the express terms of a specific statute' establish a 'substantive right to compensation' from the Judgment Fund.") and *Cherokee Nation of Oklahoma v. Leavitt*, 543 U.S. 631 (2005).

## II.   ARGUMENT

The Government's response hinges on two false premises: (1) that it was always Congress' intent to limit risk corridors "payments out" to "payments in" and, therefore, HHS could properly administer those payments in a budget neutral fashion (Gov. Resp. at 2) and (2)

---

[1] Some members of Congress have claimed that they have limited appropriations for RCPs to payments in to prevent a "bailout" of the health insurance industry. *See, e.g., politifact.com/ truth-o-meter/statements/2016/feb/25/ marco.rubio.* It is not a "bailout." It is a statutory system for the Government to share risk with QHPs and thereby encourage Co-ops like Lincoln to enter the new health insurance market in the first place. *E.g.*, AR 88, 951-952. Even using Senator Rubio's own metaphor—"bailout"—Mr. Rubio and Congress tore the hole in Lincoln's non-profit ACA insurance boat by refusing to fund RCPs as the statute requires. Any "bailing" now required is entirely of their own doing.

that HHS has discretion to operate RCPs over their entire three years of the program rather than annually and, therefore, no RCPs are even due.

The ACA does not limit RCPs out to RCPs in. The statute does not say that. Its implementing regulations do not say that. In preparing for implementation of RCPs, HHS did not interpret the ACA in that way. Rather, the Government admits risk corridors was designed so that the Government would share risk with QHPs like Lincoln. *E.g.,* AR 88, 951-52, 616, 1366, 115-116, Lincoln App. A-89, A-66. But if risk corridors are budget neutral then the Government shares no risk. HHS itself has admitted the risk corridors program is not statutorily required to be budget neutral and its initial implementation did not implement RCPs in a budget neutral fashion. AR 767 (risk corridors not budget neutral; "Regardless of the balance of payments and receipts [for risk corridors], HHS will remit payments as required under Section 1342.") compare AR 735 (ACA risk adjustment program is designed to be a budget neutral redistribution among issuers).[2] RCPs could not be budget neutral or, by definition, they would not be a "risk corridor." *See* GAO letter to Congress, September 30, 2014 (AR 114) ("the phrase 'risk corridors' as used in Section 1342, is generally understood to mean a mechanism for limiting an insurer's losses or gains because costs are higher or lower than expected.")

HHS also repeatedly admits, including most recently in September 2016 (Lincoln App. 15), both before and long after this litigation was brought, that the RCPs are an obligation of the Government "due" and owing regardless of any budget shortfall. The DOJ's litigation position is at odds with the very agency it represents.

---

[2] The Government argues HHS agency decisions and how to administer its program are entitled to deference. Gov. Resp. 13. While Lincoln does not believe any deference should be given under the facts in this case (*See* Lincoln Response to Gov. Motion 20-22) (Lincoln Resp.), the Government picks and chooses when to give deference to its agency. Isn't HHS' conclusion the risk corridors program is not statutorily required to be budget neutral entitled to deference? Aren't HHS's repeated conclusions and admissions that the Government is still obligated to make full risk corridor payments, even if there is a risk corridors shortfall, and that these amounts are "due" and "owed," also entitled to deference?

In its Response Brief (Gov. Resp.) p. 19, the Government complains that under Lincoln's interpretation of the ACA's risk corridors program, HHS would be the uncapped insurer of the insurance industry.  It says at p. 20, again without citation, that "Congress did not intend that result."  Yes it did.  The Government shares risks with QHPs who provided insurance in compliance with the statute and its regulations.  It shares that risk based on calculations and limits expressly created by statute.  The result Congress did not intend—through the plain language of its own statute—was that the Government would share no risk with QHPs under risk corridors by refusing payments that it expressly committed by statute to make.  It must pay for the obligations it undertook that induced QHPs like Lincoln to provide insurance.

Likewise, it was always the intent that RCPs be calculated and made annually.  *See* Lincoln Resp., pp. 12-23.  If not, why did HHS require RCPs in to be made annually?  Because it is an annual program.  Why did HHS pay out any RCPs for 2014?  Because it is an annual program.  How does the Government share risk to support QHPs in the early years of the program if it does not make annual risk corridors payments?  It doesn't.  It is an annual program.

The Government's arguments fall under the weight of their own baseless premises, the plain language of the statute, and the repeated admissions of its own agency.

### A.    There is Jurisdiction.

The Government's jurisdiction argument is also hinged on two false premises:  (1) that there must be money "presently due"; and (2) that no such money is due.

First, as addressed in Lincoln's Motion, pp. 8-9 and Lincoln Resp., pp. 6-12, there is no "presently due" requirement for jurisdiction.  Lincoln does not have to first prove its case on the merits for the Court to have jurisdiction.  All that is required is a money-mandating statute (which is indisputably present here in the form of the ACA) and that the statute can be fairly

interpreted as mandating compensation for breach of its money-mandating requirement (it plainly can).

Gov. Resp. p. 9 cites the same cases as in its motion to dismiss on jurisdiction. Those cases do not involve money-mandating statutes. It also now cites *Lummi Tribe,* 99 Fed. Cl. 596-597. That case does not hold there is any money "presently due" requirement for jurisdiction. In fact, it affirms Lincoln's position (even under a grant program as the Government asserts the ACA is here–though it is not):

> [W]e conclude that plaintiffs have properly asserted a claim under a money-mandating statute... and that we may exercise jurisdiction regardless of the status of that statutory scheme as involving the payment of grant funds.

99 Fed. Cl. at 597.

Gov. Resp. p. 11 claims *Fisher* 402 F.3d 1167 did not abrogate the independent requirement that a plaintiff seek "actual, presently due money damages." It cites *Fisher*, 402 F.3d at 1173-1175. Those cited pages do not discuss "presently due money damages" at all but instead confirm the single stage money-mandating test restated by the Supreme Court in *United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003).

The Government citation to *King*, 395 U.S. at 3 is also inapposite because that case does not impose a "money presently due" standard for Tucker Act jurisdiction. Further, after *King*, the Supreme Court has interpreted the Tucker Act to require for jurisdiction a money-mandating statute that may be interpreted to permit damages for its breach. *See White Mountain*, 537 U.S. 465.

The Government's citations in its Response, pp. 11-12, to *Albino*, 104 Fed. Cl. 801, and *Shinnecock*, 782 F.3d 1345 do not apply because in those cases the Plaintiff had not yet undergone the events predicate to damages. Here, Lincoln has.

Second, the RCPs are presently due to Lincoln in any event. The Government does not address the 2014 RCPs that were due a year ago and only partially paid. The amounts requested for 2014 are the exact amounts HHS approved. AR 262, 293, 431 (Lincoln App. 9). The Government is bound by its own numbers.[3] HHS admits these amounts are obligations of the United States to be paid.

The RCPs for 2015 are also due now. Gov. Resp. p. 10 claims "[n]othing in the Administrative Record or the ACA supports the conclusion that risk corridors amounts for 2015 are presently due." This is plainly false. The Government included in the AR Lincoln's 2015 verified risk corridors submission showing amounts due. AR 1256 (Lincoln App. 8). The Government has had three months to contest these figures and provides no evidence they are wrong.[4] Moreover, the Government's own AR shows the 2015 amounts are presently "due." HHS stated it will pay them in December 2016. AR 1251, p. 10; 1498. HHS even stated it already distributed these payments on August 1, 2016. AR 1251, p. 19. They must then be "due." The Government admitted they are due annually. Gov. Br. p. 8. HHS records them as "due" and as an obligation of the Government. AR 47. HHS has repeatedly stated it should and will make RCPs out in the same timeframe as RCPs in–within 30 days of submission. *E.g.*, AR 998, 969.

Even if the 2015 RCPs were not technically now due (and they are), the Government has now announced it will breach its obligation to pay them in 2016 and will make no such payments for 2015 RCPs in 2016. Lincoln App. 10. The 2015 RCPs are presently due and owing.

---

[3] For 2014 RCPs, the Government argues they are now only "due" after the full three years of the program and only if and when HHS and Congress decide to pay. This could not be true or no statutory obligation would ever be "due." It is an annual obligation in any event. *See* Lincoln Resp., pp. 13-23.

[4] The submitted figures for 2014 were accepted by HHS without change. Gov. Resp., p. 10 complains that the risk corridors numbers in Lincoln's complaint for 2015 do not match the numbers in its motion. The Complaint was filed in June and had estimates (¶¶ 143, 164) for 2015. The verified numbers submitted on August 1, 2016 had changed from the estimates and are final. Again, the Government provides no evidence to contest these final numbers.

### B.   Lincoln is Entitled to Judgment On Count I.

Gov. Resp. p. 2 claims the risk corridors program is a statutory "benefits" program but the Government provides no citation support for that conclusion and does not identify what a "benefits" program is.

The risk corridors program under the ACA was part of an overall program and was designed to induce QHPs to provide insurance for certain high risk groups, at reduced premiums. The Government, in turn, shares risk with the QHPs in the first three years. Lincoln complied with all QHP program requirements. It took all insureds from the specified high risk categories with no exclusions for preexisting conditions. It undertook huge risk and incurred enormous expenses and losses. The *quid pro quo* was the Government's obligation it "shall pay" Lincoln RCPs for annual plan years 2014, 2015 and 2016 as expressly provided in the ACA. These undisputed facts directly support the existence of a Government obligation to pay.

Gov. Resp. pp. 2, 14-16, misreads controlling Supreme Court precedent in *Ramah* and *Cherokee Nation*, arguing they are limited to cases of actual contractual obligation. First, there are such obligations here. *See* Lincoln Resp. pp. 30-43. Second, even if there were not, the reasoning of these cases still applies where, as here, there is an express statutory obligation and commitment to pay. The Government cites no case holding *Ramah* and *Cherokee Nation* did not apply where there is a statutory mandate to pay and no language reserving payment based on appropriations.

The premise that a "benefits" provision in a statute cannot be enforced by this Court is itself contrary to law. The Tucker Act plainly provides jurisdiction for and permits judgment "upon any claim against the United States founded upon ... any Act of Congress or any regulation of an executive department. ..." Here we have both. *See also, e.g., Ellis v. United States*, 222 Ct. Cl. 65, 610 F.2d 760 (1979) (claim allowed under statute entitling firefighters to

special retirement benefits); *Friedman v. United States*, 159 Ct. Cl 1, 30-31, 310 F.2d 381 (1962) (recognized jurisdiction over claim under statute entitling servicemen to disability retirement benefits); and *Smykowski v. United States*, 227 Ct. Cl. 284, 285 (1981) (recognizing jurisdiction over claim under act granting survivors' benefits to public safety officers).

Gov. Resp. p. 16 cites *National Railway Passenger Corp.*, 470 U.S. 451, for the proposition that absent a clear indication that the legislature intends to bind itself contractually the presumption is there is no intent to create private contractual invested rights. That case is distinguishable on its facts because there Congress "expressly reserved" its rights to "repeal, alter or amend" the statute and program at any time. The ACA does not expressly reserve such rights nor has Congress repealed, altered or amended the statute for the risk corridors program. Further, the Federal Circuit has noted in *Prudential Insurance Co. v. United States*, 801 F.2d 1295, 1297 (Fed. Cir. 1986) that an implied in fact contract is inferred as a matter of reason or justice from the acts or conduct of the parties. *See also, Sperry Corp. v. United States*, 13 Cl. Ct. 453, 458 (1987) (imposing contractual liability where Government induced or encouraged performance and knew or should have known that the contractor expected compensation); and *New York Airways v. United States*, 177 Ct. Cl. 800, 369 F.2d 743, 751-752 (1966) (despite no express contractual authorization in statute, parties' conduct exhibited an enforceable implied in fact contract based on compliance with statutory requirements).

The Government cites various cases at p. 17 of its Response for the proposition that where appropriated funds fall short of amounts due under a statutory formula the agency has the discretion to reduce the payments proportionately to the extent of its budget authority. These cases are all distinguishable on their facts. *Prairie County*, 782 F.3d 685 involved a benefits statute where "Congress does not require the local governments to provide particular services in

8

return for receiving [statutory] payments." 782 F.3d at 690.  Further, the plain language of that statute provided that Congress limited the Government's obligation to the amount appropriated and indicated amounts were available only as provided in appropriations laws.  *Id.*  The ACA contains no such limitations and unlike *Prairie County*, required particular services by QHPs.

Likewise, *City of Los Angeles*, 556 F.2d 40 involved a grant program for the FAA and, further, the initial law had specific limits in the amounts of appropriations for the fiscal years of the program.  Lincoln's case does not involve a grant nor does the law have any limitation on future appropriations.  *Mashpee*, 336 F.3d 1094, did not involve a statutory mandate to pay; it involved a suit by an Indian tribe waiting to be recognized by the applicable federal agency that did not have adequate resources for timely review of its application.  *Cobell*, 428 F.3d 1070 involved an action to force an agency accounting as trustee for an Indian tribe's trust fund.

The Government conveniently omits reference to caselaw directly contradicting  its position. *See In Re Aiken County*, 725 F.3d 255, 259 (D.C. Cir. 2013) ("Federal agency may not ignore statutory mandate simply because Congress has not yet appropriated all the money necessary to complete a project"); *Fisher*, 402 F.3d 1175 ("if the Government's officials determinations under the [money-mandating] statute are in error, the court is there to correct the matter"); *King v. Burwell*, 135 S.Ct. 2480, 2489 (2015) (declining to apply deference to HHS in ACA context where the interpretation concerned "the ACA's key reforms involving billions of dollars in spending each year and affecting the price of health insurance for millions of people."); and *Cobell*, 428 F.3d 1076 ("the significance of appropriation bills is of course limited and the associated legislative history even more so. ...post-enactment legislative history is not only oxymoronic but inherently entitled to little weight").

**C.    Congress Did Not Change the Government's Obligation to Pay by *Post Hoc* Appropriations Laws.**

Gov. Resp., pp. 2, 20-22 bucks the great weight of authority that *post-hoc* single year appropriations bills do not change prior substantive law.

The plain language of the ACA requires that the Government "shall pay" RCPs to issuers like Lincoln on an annual plan year basis. Congress appropriated over $3.6 billion in early 2014 for all HHS' obligations, without risk corridors restrictions, to remain available until September 30, 2019. Public Law 113-76. The GAO concluded these funds were available to make risk corridors payments. There was no "original intent" that risk corridors payments be limited to collections as argued in Gov. Resp. p. 22. Contrary to the Department of Justice litigation position, HHS agrees. AR 767.

Congress did not repeal or modify the ACA or its risk corridors program. Instead, in late 2014 it limited use of certain appropriations for 2015 RCPs, while continuing to allow RCPs to be made from collected user fees (including risk corridor, risk adjustment and reinsurance). It did the same in late 2015 for 2016 RCPs. These actions do not change the Government's statutory obligations to make full RCPs. The relevant agency, HHS (to which the Government argues deference should be given), itself repeatedly admits risk corridors is not statutorily required to be budget neutral, and did not implement the RCP program in a budget neutral fashion initially. Regardless of appropriations, HHS has expressly acknowledged that the Government is obligated to make full RCPs. AR 767, 1422, 293, Lincoln App. 9, 10.

The Government claims, even if the ACA were not originally intended to be budget neutral for RCPs (as interpreted by HHS itself), that Congress could change the law by subsequent appropriations acts. Its citations in its Response, pp. 23-25 again do not apply on their facts. *Bickford,* 228 Ct. Cl. 331 involved a military pay statute that expressly directed that

there was no entitlement to pay during a period of excess leave; the appropriations act there also included an express prohibition against using appropriated funds for training. *Dickerson*, 310 U.S. 554, held, unremarkably that Congress may authorize a deviation for pre-existing law by a provision in an appropriations act that does so <u>expressly</u>. There, the appropriations act directly contradicted the authorizing statute. There is no such language here. *Dickerson* also involved a specific appropriations act as to the substantive law in question, not a general appropriations act, as here. *Republic Airlines*, 849 F.2d 1315, involved an appropriations act that prohibited any of the funds appropriated by the act to be expended for the project in question. Again, Congress left a funding source here completely intact—user fees. *Envirocare*, 44 Fed. Cl. 474, does not deal at all with payments.

The Government's cite in its Response p. 24 to *Will*, 449 U.S. 200, does not apply because the statute there stated that the cost of living adjustments in the statute for one year shall not take effect. The plain statutory words manifested an intent to repeal. Likewise, the Government's cite to *Mitchell*, 109 U.S. 146, is inapplicable because the appropriations statute reducing interpreter salaries there expressly repealed that section of the enabling statute. A fixed salary sum was substituted for a total sum to be distributed at the discretion of the agency. There is, of course, no such express repeal of the ACA or its risk corridors program here.

Finally, in *Matthews*, 123 U.S. 182, Congress by express statute reclassified a government agent thereby "repealing by implication the prior classification." Once again, there is no such express or implied repeal here. In fact, *Matthews* has been cited for the exact opposite proposition for which it is advanced by the Government here. *See, Armstrong,* 485 F.2d 1, 45-46 (10th Cir. 1973) (dissenting opinion) ("The Supreme Court has consistently stated that judicial interpretation is disfavored as a means of establishing a repeal of legislation. In one case only

has repeal by implication been upheld. *Matthews v. United States*, 123 U.S. 182. Such implied repeal has been rejected in a multitude of cases.") These cases (uncited by the Government) include: *Universal Interpretive Shuttle Corp. v. Washington Metro Area Transit Commission*, 393 U.S. 186, 193 (1968); *Jones v. Mayer Co.*, 392 U.S. 409, 437 (1968); *Amell v. United States*, 384 U.S. 158, 165 (1966); *United States v. Welden*, 377 U.S. 95, 103 (1964); *United States v. Zacks*, 375 U.S. 59, 67 (1963); *United States v. Philadelphia National Bank*, 374 U.S. 321, 349 (1963); *Silver v. New York Stock Exchange*, 373 U.S. 341, 349 (1963); *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 227 (1957); *Rosenberg v. United States*, 346 U.S. 273, 294 (1953); *FTC v. APW Paper Co.*, 328 U.S. 193, 202 (1946); *United States v. Borden Co.*, 308 U.S. 188, 190 (1939); and *Posadas v. National City Bank*, 296 U.S. 497, 503 (1936).

The Government's citation to *Highland Falls*, 48 F.3d 1166 at p.25 of its Response also does not support its position. In that case the statute in question specifically stated that the local educational agency shall be entitled to receive such amount as in the judgment of the secretary is equal to the financial burden imposed. It also specifically stated that Congress may choose to appropriate less money for entitlements than is required to fully fund, and provided a mechanism in that circumstance for payments. No such elements are present in the ACA or under its risk corridors program. Likewise, in the Government's cite, *City of Arcata*, 133 F.3d 926, Congress specifically defunded everything that the FAA was obligated to do under the statute and in *American Federation*, 659 F.2d at 161, a representative salary statute made an explicit reference to the statutory scheme that set wages, and the Court concluded the plaintiffs did not have a vested statutory right to wage increases until their agencies issued orders granting those increases.

Again, the Government ignores well established case law that rejects the position it attempts to take here. *See New York Airways*, 369 F.2d 743, 748 ("it has long been established that the mere failure of Congress to appropriate funds, without further words modifying or repealing, expressly owed by clear implication, the substantive law, does not in and of itself defeat a Government obligation created by statute."); *TVA v. Hill*, 437 U.S. 153, 190 (1978) (doctrine that repeals by implication are disfavored "applies with even greater force when the claimed repeal rests solely on an appropriations act."); 1 GAO, Principles of Federal Appropriations Law at 2-49 (3d Ed. 2004) ("a mere failure to appropriate sufficient funds will not be construed as amending or repealing prior authorizing legislation.").

The Government's cases do not apply and well-established caselaw shows that its arguments are meritless.   The subsequent individual appropriations acts that limited appropriations to certain funding did not directly or by implication amend the ACA or its risk corridors program.

**D.   The Government's Other Arguments are Factually and Legally Baseless and Do Not Abrogate the Plain Requirement of the ACA that It "Shall Pay" RCPs.**

The Government's Response contains a hodgepodge of other arguments apparently designed to either confuse or mislead the Court. They fail both factually and legally.

Gov. Resp. p. 4, claims, without citation, that the 3Rs of the ACA operate to redistribute funds from certain entities to other entities on the basis of relative actuarial risks, claims costs and premiums charged. This is true as to risk adjustment and reinsurance. But it is not true as to risk corridors. The Government shares risk with QHP under the risk corridors program. If all QHPs incurred losses, there would be no "payments in", but QHPs would still be entitled to RCPs under the ACA's express terms.

Gov. Resp. p. 4 claims, again without citation, that the reference in Section 1342 to risk corridors "payments in" is the only reference in the ACA to any source of funding to be used for risk corridors payments out. It is not. The statute does not say "payments in" is a funding source for risk corridors "payments out." The Government itself argues there was no initial funding provided for the ACA for risk corridors at all. Gov. Resp. p. 5. The first funding provided – in the 2014 Appropriations Act – had no limits with respect to RCPs as to the $3.6 billion appropriated.

Gov. Resp. p. 4 says, without citation, that "there are no risk corridor contracts." But to qualify as a QHP a provider had to sign a written agreement like those Lincoln signed. Lincoln App. 2-4. It had to comply with ACA regulatory requirements. Gov. Resp. p. 3. The QHP Agreement contemplates FFE user fees (*i.e.* risk corridors) and setoffs against payments of user fees like risk corridors. One cannot make a setoff if one is not required to make a payment.

Gov. Resp. pp. 7-8 tries to rely on a Congressional explanatory statement that observed that in "2014 HHS used a regulation that the risk corridors will be budget neutral and characterized that statement as meaning that the federal government will never pay out more than it collects for risk corridor payments." This is not probative of anything here. An after the fact observation that is itself *post hoc* hearsay is being offered to characterize an agency statement that contradicts that agency's own prior statements. Double *post hoc* hearsay.[5] It is wrong in any event. HHS admitted the statute did not require risk corridors to be budget neutral. AR 767. It also admitted repeatedly later that even though it would try to operate risk corridors as budget neutral, the Government still had an ongoing obligation to make full risk corridors payments. *Id.* AR 767, 1482, 293 and Lincoln. App. 9, 10.

---

[5] *See Parker v. Office of Pers. Mgmt.,* 974 F.2d 164, 166 (Fed. Cir. 1992) ("*Post hoc* rationalizations will not create a statutory interpretation deserving of deference").

Gov. Resp. p. 18 claims "Congress has not mandated that HHS make RCPs in excess of collections." It provides no citation. The plain language of the ACA requires that HHS "shall pay" RCPs without restriction. If it did not, there is no risk sharing.

Gov. Resp. p. 18 then says the risk corridors "program is self funding." Again, no citation. Nothing in the ACA or its implementing regulations so provides. HHS did not interpret it in that way in preparing for implementation of RCPs. That Congress limited use of certain appropriations after the fact in general appropriations laws, without repealing the ACA, does not change the law.

Gov. Resp. p. 20 – shows its absolute desperation to avoid making RCPs – by pointing to an earlier unenacted bill. It was a bill relating to potential employer and self-funded health insurance coverage. It was not related to ACA. It has no probative value here. *See, e.g., Chrysler Group v. Fox Hills*, 776 F.3d 411, 430 (6th Cir. 2015) (on treacherous ground to derive Congressional intent from unenacted bills because they "are not reliable indicators of congressional intent," citing *Mead Corp. v. Tilley*, 490 U.S. 714, 223 (1989)). Moreover, the inference the Government attempts to draw is unsupported in any event. The Government claims this abandoned bill would have required HHS to establish and administer a contingency fund for risk corridors and because such language is missing in the ACA it means Congress intended for ACA risk corridors to be self-funding. But the prior unrelated and abandoned bill proposed a contingency fund only for risk corridor payments in, and no fund for payments out – and it was specifically contingent on future appropriations. It shows nothing about Congressional intent regarding the ACA.[6]

---

[6] This unenacted bill does not show Congressional intent with respect to the ACA even if it did have any probative value because of the plain language of the ACA that it "shall pay" risk corridors. *See Chevron U.S.A., Inc. v. National Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of

Gov. Resp. p. 20 shows the Government's further desperation in its discussion of the ACA's requirement that risk corridors "shall be based" on the Medicare Part D program. It argues RCPs were only to be "generally" based on the Medicare Part D risk corridors program. *Id.* The statute does not use the word "generally." The Government also argues Congress omitted language in the ACA from Medicare Part D that obligated the Secretary to make risk corridor payments under Medicare Part D in excess of amounts collected and therefore, there is no such obligation under the ACA. This interpretation turns the plain language of the statute on its head. It specifically said the ACA risk corridors program "shall be based" on the Medicare Part D program and that program requires such payments in excess of amounts collected (and requires annual payments). Congress did not have to repeat all the language of Medicare risk corridors program in the ACA. It already incorporated those requirements by its "shall be based on" language. The Government's argument once again strains the limits of credulity and good faith.

## III.   CONCLUSION

Gov. Resp. p. 26 itself demonstrates the inherent unfairness of the legal position it attempts to take. Recognizing the weakness of its legal position, it states:

> Even if Congress' intent to limit the United States' liabilities to the extent of risk corridors collections were unclear at the time the ACA was enacted, by the time any payments could be made, Congress had 'directly spoke' to the issue by restricting the use of HHS funds to support the risk corridors program.

It does not and cannot work this way or no one would undertake to comply with Government statutes that provide the Government "shall pay" or contract with the Government. The ACA was clear – "shall pay." Congress cannot change that obligation years after the fact to

---

the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.")

avoid accrued obligations simply because required payments had not yet been made.  Congress did not "directly speak" to the issue by repealing the law.  It just limited the funding.  That is not enough.  It could not be enough.

Lincoln is entitled to judgment for the full amounts of the risk corridor payments due and owing to it for 2014 and 2015, and for a declaration of further judgment once the 2016 risk corridor payments amounts are determined in 2017.

Dated: October 19, 2016     Respectfully Submitted,

           s/ Daniel P. Albers

           Daniel P. Albers
           BARNES & THORNBURG LLP
           One N. Wacker Drive, Suite 4400
           Chicago, IL 60606
           Telephone:  (312)357-1313
           Fax:  (312) 759-5646
           Email: dalbers@btlaw.com

           *Of Counsel:*

           Scott E. Pickens
           BARNES & THORNBURG LLP
           1717 Pennsylvania Avenue N.W.
           Suite 500
           Washington, DC 20006
           Telephone: (202) 371-6349
           Fax: (202) 289-1330
           Email: scott.pickens@btlaw.com

           *Counsel for Plaintiff Land of Lincoln*
           *Mutual Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 19th day of October 2016, a copy of the foregoing was filed electronically.  As I understand, pursuant to RCFC Appendix E, V.12.(c), the Court's Notice of Electronic Filing satisfies the service requirement of RCFC 5 and the proof of service requirement of RCFC 5.3 via operation of the Court's electronic filing system.

s/ Daniel P. Albers
Daniel P. Albers

DMS 4409508v4